You're on to the fourth case of the morning call, 2-14-20. Pekin Insurance Company v. Christopher Murphy v. Paul Murphy On behalf of the appellant, Mr. Russell M. Barnett On behalf of the appellee, Mr. Vincent Paul Schmelz Mr. Barnett Good morning, members of the court Good morning As you're well aware, this case turns on an interpretation of the Supreme Court decision in Dick's mutual matter. There is a line from the Auto Owners v. Callahan case that I think is integral to this matter, and that is, a tenant is not liable for fire damage to the lease premises unless the terms of the lease construed as a whole clearly indicate that the party is intended for the tenant to be liable for such damage. I think that condenses the nature of this dispute down into one sentence. I need to talk to the bailiff. Okay. Raise your microphone a little bit, please. Thank you. Is that better? Thank you. And I think if you look back at the Dick's decision, there's a line in there that's also imperative to the decision here today, is that where the court says, Under the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of a co-insured. It doesn't say that under any circumstances, under any lease, tenants automatically achieve the status of co-insureds under the landlord's policy, but under the specific facts of that case. And applying that rationale, there are a number of differences between the lease at issue in Dick's and any of its progeny and the lease at issue here. Well, the lease in Dick's is, as the Supreme Court said, while you may disagree with the grammar, the style, the something else, maybe the content, the fact remains this is the lease between these two people. And so from that, things have been added as time has gone on. But the basic holding, I think you're correct in. Well, I think that in Dick's, they, and again, in the Cincinnati v. DuPlessis case, could describe their lease as a simple contract for shelter in exchange for rent. And I don't think that that is certainly what is at issue here, based upon the fact that, you know, unlike most of those other cases here, there are two educated, advanced parties that are negotiating not only a multi-page lease, which is different than Dick's and a lot of the other cases that followed, such as the auto owners in the Cincinnati v. DuPlessis case, but you also have parties who freely negotiated a multi-page wire to the lease to make sure that all their terms were taken into consideration. This is an advanced document, and I think that the parties did. When you look at the overall body of the lease, the intent of the parties is clear in that they did, in fact, agree to allocate responsibility for damage to the property caused by water damage to the tenants. And there's a number of significant differences between this case and the Dick's case and some of the other ones that followed. There are a number of lease provisions, and obviously they've been pointed out in all the briefs and in the attachments that the court has seen. But there's one paragraph. The differences are a number. One, that the parties agree to be responsible for their own damage. In the Dick's case, it just said that the tenant's going to be responsible for their own property and the landlord isn't responsible for any fire damage, and the court interpreted that to be that the landlord wasn't responsible for any fire damage to the tenant's property. That's not the situation here. Here it says, specifically, the lease provides that the tenants are going to be responsible for their damage caused by their own use or misuse and neglect. And, in fact, it even gives the landlord the right to come in and make repairs if the tenants don't do it and charge them, which is exactly what Pekin Insurance is attempting to do in this situation. The second difference is that in this case... What was the rationale that the trial court gave that you think was erroneous? The rationale for its entire decision? Yes. I think that the application is that, in my opinion, the court failed to consider all the different provisions. I think the court relied, as the judge indicated in his opinion on Justice Hippel's dissent, saying that all tenants, you know, Dick's, although he disagreed with Dick's, said that Dick's hereby makes all tenants co-insurance under a landlord's policy. And he relied on a nationwide case, which I think can certainly be distinguished from this one as well. I think that the issue, in my opinion, is the reference to the CGL policy and that, in this instance, the landlord required the tenants to purchase a CGL policy with a million dollars, naming the landlord as an additional insured on that policy.  with the tenants as co-insurance, and then to require the tenants to purchase their own policy with the landlord as an additional insured. So, in this instance, I think that was where the error came in because there was a lot of discussion regarding first-party and third-party claims. Now, as the court is well aware, first-party claims are defined, for lack of a better term, as losses sustained by the insured. Third-party claims can be defined as losses sustained by someone else for which the insured is responsible. And that is what a CGL policy does, and that is what was required here. The Murphys were required to purchase a CGL policy for third-party claims. In this case, the landlord is a third party. They damaged the house. They're responsible to the landlord. That CGL policy has to pay for the damage that they caused. And it specifically references, in the lease provisions, water damage. The tenant shall be responsible for any water damage caused to their house by their own use, misuse, or neglect. So, I think that that is a big difference, certainly between any of the other cases cited in the briefs and the progeny of Dix and the instant situation, and also there's the indemnification provision. If, in fact, the tenants were to be co-insured on the landlord's policy, why would there be an indemnification provision? I mean, if they were all going to relate back to the landlord's insurance policy. I follow what you're saying, but my question was, what do you think trial court did that was erroneous and not? I don't really want to know why so much as I want to know what his ruling or his holding or his rationale was for ruling the way he did, because once you tell me that, then I will decide whether or not I think it was wrong, regardless of what you say, because it's nice to have citations to authority. Unfortunately, the law isn't always based solely on what the parties tell us. We do independent research. And so, could you reiterate just what you think the trial court did that was in error? Because it seemed to me like you were arguing why he was in error instead of telling me what it was that you think was erroneous. Well, I obviously do think the decision was erroneous, but I think that the judge's rationale in reaching that was because of the reliance on the nationwide case, which can be distinguished from the lease in this issue as well as – and I think that is, if you look at Judge – And I didn't need to know why you thought the nationwide case was wrong or why he relied on it was error. I just wanted to know what it was. I think that his reliance on the nationwide case is misplaced in this situation because of the differences between the leases, the various leases at issue, the paragraphs here, paragraphs in that respective lease. Well, didn't Judge Souter in this case say that he just made a finding that the Murphys were coinsured and Pekin couldn't sue them because they were coinsured by Pekin, so they were not an appropriate party? That was his basic ruling, correct? Correct. Did he consider the lease provision that says that the parties are responsible for this, this, and this, except fire, which was the nationwide case? Nationwide was clearly a fire case. Correct. You can't make it out to be anything else. It certainly wasn't a water case. It's hard to say what he did and didn't consider because there wasn't a written opinion. Obviously, we drafted the order, counsel and I, and all we have insight into his thinking is the transcript. And at the end of the transcript, after he listens to our arguments and asks us some questions, he goes into a discussion about the nationwide case and that he thinks that that is important and has precedential value in this situation. Well, certainly Justice Hudson and his colleagues on that particular case really went over what Dix was about, went over what Chancery is about, and then did a lot of things that they really didn't have to do, but it set a stage, and then they went to the issue, which is this was a fire in nationwide, and fire is clearly accepted. And obviously, we argued in our briefs, pointed out the difference between the fire and the water, and nationwide there was a discussion, and we brought it up in our brief, about the court considered the impact of insurance premiums on rent, and that certainly wasn't a discussion here. There was flat rent, and there was a separate requirement for an insurance policy, which I also think distinguishes this case from any of the cases that have been cited before the court because they are there. And I can't tell you the name, and I apologize, but I think there's at least one other case where there was some insurance, and that was considered to be of no circumstance because maybe it was a nationwide. I can't remember. Somebody else did have insurance, but it didn't matter because it didn't apply for this type of thing. So I think there's one case out there, but the real issue seems to be that Judge Souter said that they were just coinsured and ended his discussions at that point. And I think the transcript certainly bears that out, that that was his, and I apologize if I paraphrase it correctly, but that was his gut instinct. That was his feeling on this case, and that was how he felt, and then he had a little discussion on the nationwide case. So there are a number of differences with regard to, you know, between the lease at issue here and the lease at issue in Dix and any other of the progeny. You know, like I said before, in the DuPlessis case cited by counsel, it was an oral lease, which the court defined as a simple contract for shelter in exchange for rent. The same thing with the auto loaner's case. It was a simple one-page lease consisting of three paragraphs, and the court found that there was no discussion or allocation of liability for damages. And obviously what we're positive before the court is that this is an advanced lease between advanced parties that took into consideration, and that unlike that one phrase from Dix, when you consider all the facts and you consider the unique circumstances of this case, that we believe it is clear that the parties did in fact allocate responsibility for damage, water damage to the subject residence caused by the use and misuse of the tenants. What about the second, actually the judge did the 619 first and then did the 615. Do you have any response you want to make on the 619? With regard to the subrogation waiver? Yes. Obviously it was our position, as the court is well aware, we had submitted an affidavit from a member of Pekin Insurance Company indicating that in fact that there was additional money to be paid as a result of this waiver of subrogation. There wasn't really a whole lot of discussion before Judge Sutter. He just said that he felt there was a question of fact, and he was going to deny the motion on that basis. And of course there's a cross appeal on that particular issue. There is a cross appeal. Obviously we didn't respond to that, and we didn't file a brief with respect to that, because obviously our position is there was a question of fact, Judge Sutter did, and there was no irreversible error in that regard, and he was the person best suited to hear the evidence, and that was his decision. Even without your affidavit, although I think it's important to do, do the other cases, all of the other cases we've talked about sort of, what am I going to say, sort of support the position that there is? There might be a question of fact whether that rent was intended to pay for insurance, or did the subrogation waiver increase the payment of the insurance? And don't some of the other cases generally support that position anyway? I don't necessarily think so, because obviously the fact that they were discussing the effect of a subrogation waiver was obviously if one party was to be paying more than was initially considered, it would be essentially a fact of additional rent, and that the party said this is going to be the rent, but by virtue of the insurance that I'm required to purchase under the terms of the lease, that if in fact one of us has to pay additional, then there won't be a subrogation waiver. Again, to summarize, there are significant differences between this lease, the lease in Dix, and any of the other cases that have been cited before the court, and we thank you for your time. Thank you. You'll have an opportunity to make your comments. Thank you. Mr. Schultz, you may proceed. Your Honor, may it please the Court. As this Court noted in the Cincinnati Insurance Company v. Duplessis case, the Supreme Court's opinion in Dix Mutual Insurance v. Lafayette asserted two rationales to support its opinion, each of which requires that this Court affirms the lower court's opinion in favor of my clients Chris and Paula Murphy. Beacon Insurance appears to either ignore the second rationale in Dix or conflate it with the first rationale. The second rationale in Dix, as this Court recognized in Cincinnati Insurance, is simple. When the property owner obtains insurance that covers the loss at issue, there is no question of fact the tenant becomes a co-insured simply by paying rent. As this Court held in Cincinnati Insurance, there's a period and full stop at the end of that rationale. But in Cincinnati Insurance, it was an oral lease. The parties generally agreed to the terms of the oral lease, and it didn't say anything similar to the paragraph in this particular lease that talks about the, and I'll just say your clients, that they're responsible to put the house back in order, walls, windows, floors, it says plumbing work, I'm not sure what that means, and leave it in the same condition that they started it. There's nothing in the Cincinnati case that comes close to that, correct? Well, Your Honor, if you look at the totality of the appellate case law and the Supreme Court case law, you see all sorts of policies that come close to that. And all Cincinnati Insurance is recognizing is that after Dix, there's a new default setting. If you look back at the Stein case, Stein v. Arnold, Todd, Chevrolet, the 1968 Supreme Court case, they looked at the lease and they said, ah, there's a provision in the lease that seems to suggest the landlord will be responsible for property casualty insurance. If you look at Serrini-Picus, the other Supreme Court case on point prior to Dix, the Supreme Court looked at the lease and said, ah, there's a provision here that makes the landlord responsible for property casualty insurance on the property. Dix, there's no such proposition. There's nothing like that in the lease. And the Supreme Court says it's payment of the, they got one, and it's payment of the rent that makes the co-insured, or that makes the tenant the co-insured. Dix, in other words, says now in Illinois we presume, and it makes logical sense, we presume that the landlord is going to get coverage for the landlord's property. In fact, as case after case suggests, it would be foolish for a landlord not to get property casualty insurance. So you're saying the default you're talking about is we're supposed to presume, unless stated to the contrary by some either written or otherwise oral agreement, that to the contrary, that they are co-insured? Yes, and that's why both Cincinnati Insurance and Dix say unless there is an express provision to the contrary, we presume that landlord's going to have the property casualty, tenant's going to become co-insured by paying the rent. And that makes good sense. And, in fact, it leads to the type of allocation of liability that you had under this lease, and I'll get into that, because even if you want to look at the first rationale in Dix, or if you want to believe that there's really only one rationale in Dix, and it all turns, as counsel for the appellant has said, on the specific facts, a point I would note that Justice Freeman, in his concurring opinion in Dix, said even though the majority says it turns on the facts, it doesn't really turn on the facts here because there's no provision in the lease that made the tenant, or pardon me, made the landlord responsible for property insurance. At the end of the majority in Dix, the court concludes that under the provisions of the lease as a whole, the reasonable expectations of the parties, and the principles of equity and good conscience, the insurance company cannot maintain a subrogation action against the tenant under the facts of this case. The lease as a whole in Dix said nothing about responsibility of the tenant. This lease does. So how do we distinguish that? Because this statement at the end of Dix does not make one more important than the other, I don't think. Dix, first of all, Justice Freeman in his concurring opinion says in Dix, says that the majority's holding, while stated to be limited to the particular facts of this case, serves to elevate the status of every tenant to that of a co-insured under his or her landlord's insurance policy unless expressly indicated otherwise. And that's what they said in that last paragraph. And the other significant point from Dix, from the majority opinion, we find it significant that the parties who obviously considered the possibility of fire expressly provided for the tenant's personal property but failed to do so with respect to the lease premises. Here, in this lease, and I'll cut right to the lease, Your Honor, you have five provisions that give you context to understand how the parties allocated risk and they did not expressly provide for the tenant's responsibility. And I can walk through each of those. The first is at A21 of our appendix in the lease itself. There are two paragraphs on repairs by the lessee. The appellate focuses on the first of them, paragraph six, which requires repairs to plumbing work, et cetera, as Your Honor has noted. The second paragraph, which the appellate disregards, is paragraph seven right below it, repairs by the lessor. And it says the following, I think this is significant, in case the premises shall be rendered untenable by fire or other casualty, in other words, your four-year-old who's potty trained and stuffs the toilets full of toilet paper and the old plumbing bursts and your house is flooded, other casualty. Lessor may, at lessor's option, terminate this lease or repair the premises within 30 days. In other words, the landlord, not the tenant, repair the property within 30 days for a casualty of that magnitude. And if the lessor fails to do so, this lease is terminated. Clearly, for a significant casualty that would render the property untenable, it was the landlord's responsibility, as one would expect with property owned by the landlord. Well, it says the landlord can't. He has two options. In this case, he took the first option because this wasn't a regular lease. They were leasing with a thought down the road that they might purchase the property, correct? That's right, Your Honor, but if the lessor, if the landlord did not repair the property, the lease would be deemed terminated in 30 days, not the lessee would have to pick it up and make those repairs themselves. I think that's a very significant difference. Under limitation of liability, paragraph 13 of the lease at 822 of our appendix, it notes lessor is not an insurer of lessee's person or possessions. Lessee agrees that all of lessee's person and property in the premises shall be at risk of lessee only and that lessee will carry such insurance as lessee deems necessary. That's exactly the provision in dicts, Your Honor, and that is the allocation, a specific and direct and express allocation of responsibility as to who will carry insurance. For the lessee's personal and effects, I think is the language. That's exactly right. I would say his personal property and his personal effects. Is this house his personal property?  The floors, the windows, the doors? No. My point is, in other words, they knew how to be express and say you'll carry liability insurance for X property. And that's the same provision that's in dicts where the dicts court said you made provision for the lessee's property  He didn't for the lessor's policy. And, Your Honor, I want to address the CGL policy. I've got the rider. That's what I anticipated you're going. And if you'll indulge me for 30 seconds, I will get right there. In between the rider at 829 of our appendix, three paragraphs in a row, 10, 11, and 12, the appellate focuses on 11, which is the indemnification, or pardon me, the CGL paragraph that Your Honor has just pointed to and paragraph 12, the indemnity, but doesn't note paragraph 10. 10, 11, and 12 have to be read in context with the rest of the policy. Clearly, in 10, which is the subrogation paragraph, the parties anticipated that if you carry insurance for X risk, I get the benefit of that and nobody subrogates against me. If I carry insurance for Y risk, you get the benefit of that. Nobody can subrogate against you. That's what's contemplated in 10, and only in that context can you look at 11 and 12. What's 11? It's the requirement of the CGL policy. At page 14 of his brief, the appellate suggests that the CGL policy is for damage to the property. Every time the appellate quotes this provision, which I'm about to read, he inserts a sick in it, as if it doesn't mean what it says. Here's what it says. I think it means what it says. Such policy shall include coverage for bodily injury and property damage occurring in, on, or about the premises. Again, at page 14 of his brief, the appellate suggests, appellate's counsel suggests, that says the word to the premises. It says in, on, or about the premises. Why is that? Because comprehensive general liability policies or commercial general liability policies are about insuring damages to third persons, and that is in, on, or about the premises. Why is that significant? 322 Harris Street has a pool in the backyard. How do we know that? We know that from paragraph 12 of the indemnification provision, which says you'll indemnify me, you tenant will indemnify me, landlord, for claims asserted against or sustained by people who are using the property. And then it says specifically including without limitation the pool. So in other words, if someone comes and sues the landlord for damage in the pool or injury in the pool that's in, on, or about the property, the Murphys will cover it. How do they cover it? Through a CGL policy. But is that the only circumstance that it will cover? That is or. That's a specific. Or any act or omission of the lessee's, their agents, contractors, or invitees. In other words, any time the landlord is sued, the Murphys have a policy that covers damages in, on, or about the premises for which the landlord might get sued, whether it's a person enjoying that property or someone working on that property, or if the Murphys are running a business out of that property, the same. But here the parties have carefully allocated the risk of loss. The Murphys have to cover their personal property. The Murphys have to cover for per paragraph 12 damages in, on, or about the premises. They do it through a CGL policy, and they have to indemnify the landlord for those losses. Their mutual belt and suspenders is, again, if you have a policy that covers a loss, I get the benefit of it. If I have a policy that covers a loss, you get the benefit of it. That is clearly laid out in this policy. All right. Leave the insurance out of it. What does the, the, it's actually in the rider because they changed the, they changed the language of the lessee covenants and agrees. They take a pair, or I think a phrase out. It says lessee shall make all repairs required to walls, windows, glass, ceilings, paint, plastering, plumbing, or pipes, and fixtures belonging to the premise. Whenever such damage or injury to the same shall have resulted from lessee's misuse or neglect. How, what does that mean? It means return the property in the same clean condition in which you found it. That's what auto insurance auto auto owners insurance company versus Callahan says. That's what town realty versus Schaefer says. That's what American National Bank and Trust Company versus Edgewater says. So how are they not responsible to contribute to these debt or pay all of the repairs? Because, again, the lease draws a clear distinction. And this is the distinction that you find in the paragraph that says if there's that kind of full casualty exposure. And that's in the limitation of pardon me, not the limitation of liability. That's in the repair section. Right. And the landlord did make the repairs. Are you saying they weren't done within 30 days? What I'm saying is that paragraph seven makes it clear that that is the lessor's responsibility, not the lessee's responsibility. There's a difference between a basic problem that you have in your house, patches in the walls, garbage disposal, gummed up, that kind of thing. And the type of and may I just finish my thought. Thank you. The type of situation in which the premises shall be rendered untenable by fire or other casualties. There, the lessor has that responsibility. The parties allocated that in the lease. With that, I thank you for your time. Well, I have a question. Yes, sir. Assuming that that section was the intent of the parties, how does that section define the rights between the parties in situations where the lessee is negligent? These are the where the lessee is not negligent. It doesn't. It makes it clear in paragraph seven that if there is a fire or casualty that would render the property untenable, it is the lessor's responsibility. Why does that matter? It matters because after Dix, we anticipate that the landlord is going to get property casualty policy on their property. Well. The same way tenants are going to get some. It seems like the section or paragraph is talking about the termination of the tenancy. But termination of tenancy doesn't really relate to whether or not someone is liable in tort. I don't disagree with that, Your Honor. And I would say that the five provisions that I've cited all need to be read in context. I think the lease needs to be taken as a whole. And I think it needs to be taken in context after Dix to set the reasonable expectations of the parties in their commercial dealings. Do you have a cross appeal? We'll give you a few minutes to address that. Thank you. In the 2619, the court can grant relief when there's an affirmative matter that avoids or defeats the claim. Here, the insurance policy between Ms. Gherkins and Pekin Insurance specifically has a provision that says that the insured can waive subrogation rights. And that's at 876 in our appendix. In that provision, Pekin itself has admitted the sort of fundamental teaching, if you will, of Dix, that a tenant can become the co-insured of the landlord by paying rent. And what we have here is at 832 of that same insurance policy, we know with certainty that the subrogation waiver came as a part of the underlying policy, the basic policy, at no additional cost. In other words, that subrogation right, the right to waive subrogation, was part of the underlying policy. How do we know that? We know that because it shows a schedule at 832, which I have managed to disassociate myself from. At 832, there is a schedule. And in that schedule, you have the prices for various riders. And it notes that there's a price for various riders, but it indicates additionally that the policy itself, that this subrogation waiver comes in the policy itself. So it's not a rider that the tenant had to pay for separately. In other words, the policy comes, and I'm holding it up here, as an entire declaration with multiple riders in the base policy. The terms of the base policy are carried in a specific section of the policy, and there are no addition. And the subrogation waiver is part of that set of policies, if you will. It's not a rider, again, for which the tenant had to pay extra money. That's that. What about the affidavit submitted by the Pekin employee? It's an interesting affidavit, right? Because that affidavit doesn't say we charged her more in the base policy. It doesn't say we voided her coverage. It says that her ability to get a future policy after Pekin Insurance paid the loss in this case changed. She had to pay more in the future for a policy. It cannot be the case that the parties in dealing contemplated a subrogation waiver and said the conditions of the subrogation waiver are, A, it can't increase the cost of your policy, and B, it can't nullify your policy. But what we really mean by that is if you have to cover a loss and your carrier can't subrogate against me, and in the future your carrier then raises your rates on future insurance, we all get to jump back and say the subrogation waiver is a nullity. You said subrogation against me. Did you mean subrogation against the tortfeasor who might be a third party? I mean subrogation against the tenant. In other words, you have the policy itself that says you can waive subrogation, and you have then the lease itself, which at 829 says that there is a waiver, and we just looked at that. How does one waive a right of subrogation against the tenant? Is it through a release and discharge, a general release, or is it a letter sent to Pekin saying I waive the right of subrogation? Is there consideration involved or is no consideration involved? What's the procedure that you're talking about that supposedly would or wouldn't increase the cost of the insurance? Well, let me step back. 829, which is the lease itself, the rider, paragraph 10, says that the parties can waive subrogation and that there are two conditions provided such release of liability and waiver of right of subrogation shall not be operative in any case where the effect thereof is to one, and I'm putting a one in there, it's not in there, to invalidate such insurance coverage or to increase the cost thereof. So the provision on increase the cost thereof, Your Honor, is in the lease itself. Okay? The parties lease says we waive subrogation unless it increases the cost of insurance. How do we know it didn't increase the cost of this particular policy in this case? We know that from looking at the policy, which is the separate affirmative matter that avoids or defeats the claim, and in A76 of that policy, there's a provision where Pekin says you can waive subrogation rights, you, landlord, can waive subrogation rights, it's okay. How do we know that didn't increase the cost of the insurance policy? Because it's part of the policy itself. It's not a separate rider. It's not a separate provision. If the landlord can do it, did the landlord do it? In paragraph 10 right here of the lease, yes. Expressly as a mutual waiver of subrogation rights, and it says whenever any loss, cost, damage, or expense resulting from fire, explosion, or any other casualty or occurrence is incurred by either of the policies of this parties to this lease in connection with the premises and such party is covered in whole or in part by insurance with respect to such loss, cost, damage, or expense, or such loss, cost, damage, or expense is insurable under a special cause of loss form of property insurance, then the party so insured or insurable hereby releases the other party from any liability it may have on account thereof. In other words, Ms. Gerken, the landlord here, had insurance for this loss. As a result, she released the Murphys from subrogation rights as she was entitled to under her policy. Is there a premise or an assumption that you're making, and that is, is that as Judge Souter found that your client was a co-party or co-insured? It doesn't have to be under paragraph 10 of the lease. There just has to be property insurance that covers the loss. In other words, the allocation of risk is, if you have that property insurance, the other party to the transaction can't be subrogated against. I thought the way you read it, if there were parties who supposedly were covered by the insurance, and one of them was the one who committed the tort, then there would be waiver by the other party relative to the right of subrogation against the other one. Well, Your Honor. So that if A and B are co-insureds or parties to the insurance policy, and they're insured by Pekin, and one of them does something wrong, then there is a waiver. But the waiver doesn't automatically apply if B is not a party to the policy. Am I wrong? Well, with respect, I think you're wrong. And this may fall in the world of Dick's. You may not like the grammar. You may not like the punctuation. But it is the lease that it is, and it was the party's bargain. And it doesn't say the party who commits the tort has coverage, the other party's free and clear. Here it says, whenever a loss ellipsized is incurred by either of the parties to this lease in connection with the premises, and such party is covered in whole or in part. It's odd, right, because it starts with the plural and goes to the singular, but it doesn't suggest that the singular is a party committing a tort, a party suffering a loss. And it says a party is covered, then the other party is released, right? Then it says, or that loss is insurable under a special causes of loss form of property insurance. So in other words, if somebody has the insurance or it is insurable, neither of those things suggest that the insurance has to be procured by the party that caused the problem, the tortfeasor in your analogy. I don't think that's grammatically the way that needs to be read. Any other questions? No. Thank you, sir. Thank you. Mr. Barnett. Thank you. What's your interpretation of that section? Of the section with regard to the waiver, subrogation waiver? Well, first off, I think my interpretation is that counsel is putting this before the court as if it's the end all, be all of this case. And I don't believe it is because it doesn't reference either the lessor or the lessee. So it clearly, this paragraph clearly shows that the party is intended for one or both of them to have insurance on the structure because it doesn't say in the event of the lessor's policy or the event of the lessee's policy. It just says in the event of any policy. So there certainly could have been a situation where they both had insurance on the structure. The tenants, obviously, because they were required to and because they had an option of purchase to protect their investment. And the landlord certainly because if the house was struck by lightning, that's certainly not the tenant's misuse or neglect. If she doesn't have insurance on the property, then there's no coverage for her and the house is destroyed. So clearly, this paragraph, I think, could envision a situation where they both had it. And the fact that there isn't any reference to lessor or lessee clearly indicates that the intention of the parties was that they both would have a policy covering damage to the house. If the court is asking my interpretation of the provision of the language with regard to the waiver, I think the counsel is asking to have it both ways. Is that, you know, he talks about dating back and relating back. The fact is the waiver of subrogation, while it may be contained in the lease, doesn't ever come into play until such time as there's a loss, at which time money is spent. And that's when it says increase the cost of the coverage thereof. So counsel is saying, well, they executed this subrogation waiver at the beginning. It was part of the lease, but then later on there was additional money and the cost went up. But you can't relate back. I think you certainly can. Because, in fact, you don't know. I mean, this subrogation waiver may never come into play. So technically it doesn't really have any effect until such time as there is a loss that would be covered by an insurance policy. Does that answer your question? At a metaphysical level, possibly. I think, you know, counsel got up and started talking about the fundamental teaching of DICS. And it said that the fundamental teaching is that by virtue of, you know, payment of rent, that a tenant is considered co-insured. Let's go back and who are the parties that the clause or the paragraph or section relates to? Are you talking about the subrogation waiver? It says parties. Who are the parties? In this situation, well, the parties, the only parties to the lease would be Ms. Gherkins and the Murphys. It would be the lessor and the lessees. So it doesn't mean the parties as being the insured and the insurer or the insurers and the insurer as parties. It actually, if you look at the paragraph in here, it just says that then the party so insured shall hereby release the other party from any liability. And that is the lessor and the lessee. So, but then it goes on to say that that waiver is invalid if it increases the cost of insurance coverage thereof, which we certainly have submitted an affidavit that says that that in fact was the case. And what does coverage mean? Does that mean the rate you pay or does that mean the payout on the loss? Well, I think you'd have to go to the plain meaning because there is no definition of coverage per se in the lease. And relying on rules of contract interpretation, you'd have to look at what insurance coverage would be, the coverage that is provided by an insurance carrier. Okay. Which would include, obviously, the payments that they have to issue and the cost thereof that the insurer pays for. So going back to counsel's argument about DICS and the fundamental teaching, it's not that it's that all tenants are co-insurers. It's that where a lease does not reflect an intent for that the parties have allocated the risk of loss, then the payment of rent makes them co-insurers. That's not the situation here. The parties have clearly allocated it. And as I indicated, the segregation waiver, the fact that it doesn't reference either lessor or lessee clearly indicates that they both intended to have some insurance on that property. And certainly that the lessors or the lessee's policy would cover damage for their use, misuse, or neglect. Would it be reasonable to interpret the waiver provisions in a situation where both parties, the lessee and the lessor, are insured for loss caused by water damage and both insurance companies pay 50% of the damages. And then based upon that clause, neither party is going to seek subrogation against the other regardless of the relative degree of fault? I don't know if that's necessarily the case. So that's not a reasonable interpretation in your mind? Or it's reasonable but it's not the only one? It's not the only one. I think there certainly leads it over to other interpretations. In summation, there's a statement from one of the cases cited in the briefs, the reserve insurance case, and it says when true constructions of an agreement are arguable and one can lead to an absurd result, the other construction is to be preferred. I think that certainly applies here. To find the Murphys without liability for their egregious behavior in this case, when they certainly could have answered any of the alarms that they received, the notifications from the alarm company, they chose to ignore them and intentionally cut out Miss Durkin's from that chain of communication, would result in fact in an absurd result. But if they were co-insured, wouldn't that be irrelevant? If they were co-insured. Unless you could prove that they did this for purposes of fraud in order to collect on the insurance? I'm sorry, Your Honor. To collect on the insurance in some way, shape, or form. I think unless we can show that there was some willful and modern behavior, yes, the case law is clear. You cannot pursue a case against your own insurance. Thank you very much for your time. Thank you. Court is adjourned.